BOVEY-SHUTE LUMBER COMPANY, a Corporation, Respondent, v. FARMERS & MERCHANTS BANK OF LEEDS, NORTH DAKOTA, a Corporation, Appellant.

(173 N. W. 455.)

**Mortgages — redemption from foreclosure sale — redemption by lienholder not gift or voluntary payment.**

1. When, for the manifest purpose of protecting his liens and titles, a party redeems from a foreclosure sale, there is no gift or voluntary payment.

**Mortgages — redemption — right of party to adopt the most favorable remedy under the circumstances — wrongdoer estopped from questioning remedy adopted.**

2. When a party unjustly contrives to put another in a dilemma, to put him, as it were, between the Devil and the deep sea, and he jumps one way, it is not for the wrongdoer to insist that he should have jumped another way.

Opinion filed March 18, 1919. Rehearing denied July 1, 1919.

Appeal from District Court of Benson County, Honorable C. W. Buttz, Judge.

Affirmed.

*Sinness & Duffy* and *Adrian E. Buttz,* for appellant.

"Notwithstanding the fact that the action of assumpsit is equitable in its nature, it lies only for money and only when the rights of the parties will be adequately conserved by the payment and receipt of money." 5 C. J. 1381.

Defendant in an action of assumpsit is entitled to a trial by jury. 5 C. J. 1410; Hanson v. Carlblom, 13 N. D. 361.

"He [the cashier] has no power, however, to make a representation respecting the solvency of a customer in response to an inquiry addressed to him by one considering the desirability of making a loan to such customer or of extending credit for goods sold [or] to guarantee on behalf of the bank the performance of a contract between third parties for the delivery of merchandise." 3 R. C. L. pp. 440, 446, citing:

Taylor v. Commercial Bank, 62 L.R.A. 783, 95 Am. St. Rep. 564; Hindman v. First Nat. Bank, 57 L.R.A. 108; Norton v. Derby Nat. Bank, 60 Am. Rep. 334; North Star Shoe Co. v. Stebbins, 2 S. D. 74, 48 N. W. 833; Comp. Laws 1913, § 5150.

"A banking corporation cannot lend its credit to another by becoming surety, indorser, or guarantor for him." 3 R. C. L. 420, 425; 7 C. J. 595; Merchants Bank v. Baird, 17 L.R.A.(N.S.) 526; Norton v. Derby Nat. Bank, 60 Am. Rep. 334; Appelton v. Citizens Bank, 32 L.R.A.(N.S.) 543.

A corporation created for the purpose of banking only has no authority to engage in a business not incidental to banking. Clark & M. Priv. Corp. p. 374.

It is *ultra vires* of a corporation to execute accommodation paper or to enter into contracts of guaranty or suretyship not in furtherance of its business, unless given express authority to do so. Famous Shoe Co. v. Eagle Iron Works, 51 Mo. App. 66; Best Brewing Co. v. Klassen, 76 Am. St. Rep. 26; Lucas v. White Line Transfer Co. 59 Am. Rep. 449.

"If the party against whom demand is made has full opportunity at the time to test the legality of the exaction he should do so, and not postpone the litigation by making payment and afterwards suing to recover it back." New Orleans, etc., R. Co. v. Louisiana, etc., Co. 94 Am. St. Rep. 395 and extensive note; Joannin v. Ogilbie, 49 Minn. 564, 16 L.R.A. 376, 32 Am. St. Rep. 581; Kilpatrick v. Germania, etc., Co. 2 L.R.A.(N.S.) 575, and note; Walser v. Board of Education, 31 L.R.A. 329; McArthur v. Luce, 38 Am. Rep. 204; Behring v. Somerville, 49 L.R.A. 578; Kimpton v. Studebaker Bros. Co. 125 Am. St. Rep. 185, 14 Ann. Cas. 1126. See also 2 R. C. L. 785.

*R. A. Stuart* and *Cuthbert & Smythe,* for respondent.

Good consideration defined. Any benefit conferred or agreed to be conferred upon the promisor by any other person to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer as an inducement to the promisor, is a good consideration for a promise. Comp. Laws 1913, § 5872.

Redemption under protest of property sold at an execution is not

a voluntary payment of the debt. Murphy v. Casselman, 24 N. D. 336; Fargo v. Cass County, 28 N. D. 209; Tyler v. Shea, 4 N. D. 381; Clark v. Ostranders, 13 Am. Dec. 546, and authorities cited in note; 2 R. C. L. §§ 38, 40, and 44, and the cases cited.

No payment is voluntary that is done in a legal proceeding, that if not done the rights of the party might be jeopardized. See 5 Cyc. 470.

In an action against a corporation on a note given by defendant for property, which was delivered to defendant, it will be estopped to set up the defense of *ultra vires*. Dewey v. Toledo R. Co. 51 N. W. 1063; Wisconsin Lumber Co. v. Greene (Iowa) 101 N. W. 742; Fidelity Ins. Co. v. German Sav. Bank (Iowa) 103 N. W. 958; Garrison v. Stanley (Iowa) 110 N. W. 171.

A bank, though not expressly organized to deal in real estate, or authorized by statute to do so, may acquire and hold land for the purpose of securing itself from loss in its authorized business. State Security Bank v. Hoskins, 106 N. W. 764; Hunt v. Hauser (Minn.) 103 N. W. 1032; Eastman v. Parkinson, 113 N. W. 649; Barber v. Stromberg (Neb.) 116 N. W. 157.

The board in this case would be conclusively presumed to know that Mr. Wood was conducting such transactions, under the evidence in this case and the authorities. First Nat. Bank v. Bakken, 17 N. D. 224; Iowa v. Source, 117 N. W. 301; Debzin v. Gould Balance Valve Co. (Iowa) 118 N. W. 40; Emerado v. Farmers Bank, 20 N. D. 270; Blackwood v. Lansing, 144 N. W. 823; Bank v. Garceau, 22 N. D. 576, 134 N. W. 882.

Where an officer of the bank does that which the directors had or ought to have had knowledge of, the corporation is estopped to deny the authority of its officer where it received the benefit. First Nat. Bank v. State Bank, 15 N. D. 594, 109 N. W. 61.

There is no ironclad rule which confines an involuntary payment to cases of duress of person or goods. Money compulsorily paid to prevent an injury to one's property rights comes within the same principle. Carew v. Rutherford, 106 Mass. 1, 8 Am. Rep. 287, 2 L.R.A. (N.S.) 579; Buckley v. New York, 30 App. Div. 463, 52 N. Y. Supp. 454, 159 N. Y. 558, 54 N. E. 1089; Radich v. Hutchins, 95 U. S. 210, 213, 24 L. ed. 409, 410; Adams v. Irving Nat. Bank, 116 N. Y. 610, 6 L.R.A. 493, 15 Am. St. Rep. 477, 23 N. E. 8; Briggs v. Body,

56 N. Y. 289; Stenton v. Jerome, 54 N. Y. 480; Baldwin v. Liverpool & G. W. S. S. Co. 74 N. Y. 125, 30 Am. Rep. 277.

"If a party has in his possession goods or other property belonging to another, and refuses to deliver such property to that other unless the latter pays him a sum of money which he has no right to receive, and the latter, in order to obtain possession of his property, pays that sum, the money so paid is a payment by compulsion." Baldwin v. Liverpool & G. W. S. S. Co. supra; McPherson v. Cox, 86 N. Y. 572; Spaids v. Barrett, 57 Ill. 289; Hackley v. Headley, 45 Mich. 569; Harmoney v. Bingham, 12 N. Y. 117; Radich v. Hitchens, 95 U. S. 210, 24 L. ed. 409.

Where a party redeems property about to be conveyed by a tax deed, under protest, such payment cannot be regarded as voluntary. Hanaw v. Bailey (Mich.) 9 L.R.A. 801, 46 N. W. 1039; Martin v. W. J. Johnson Co. 128 N. Y. 605, 27 N. E. 1018; Harrington v. Plainview (Minn.) 6 N. W. 777; James v. Wilder, 25 Minn. 305; Peyser v. Mayer, 70 N. Y. 497; Bank v. Mayor, 43 N. Y. 184; Swift v. Poughkeepsie, 37 N. Y. 511.

"There must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no other immediate means of relief than by advancing the money." Brumagin v. Tillinghast, 18 Cal. 265; Radich v. Hitchens, 95 U. S. 210, 24 L. ed. 409; 2 Dill. Mun. Corp. § 943; Garrison v. Tillinghast, 18 Cal. 404.

"Circumstances of extreme necessity or distress of a party, although not accompanied by any direct duress or restraint, may also overcome free agency, and justify the court in setting aside the contract on account of some attending oppression." Wheelan v. Whelan, 3 Cow. 537; Sears v. Shafer, 1 Barb. 408, 6 N. Y. 272; Howell v. Ranson, 11 Paige, 538; Wilis v. Messervie, 11 Paige, 467, 5 Denio, 640; Lomerson v. Johnston, 44 N. J. Eq. 103; Adams v. Irving Nat. Bank, 6 L.R.A. 493.

An action may be maintained to recover back money obtained by fraud and under circumstances which, in equity and conscience, require that it should be repaid. Krump v. First State Bank, 8 N. D. 75; Dickey County v. Hicks, 14 N. D. 73.

ROBINSON, J.   In the summer of 1915, at Devils Lake, the plaintiff was a practical, hard-hearted, and hard-headed lumber and material dealer; and at Leeds, the defendant was a big-hearted banker. Mr. Wood was its cashier, general agent, and general manager.   He was virtually the bank; and, sad to say, he has departed this life and has gone where the good bankers go, and that is the cause of this law suit.   Fred Cropper was a good customer, a borrower, and a servant in the bank,—the borrower is the servant of the lender.   Cropper had three quarter sections of land, on which the bank and others had mortgages amounting to over $12,000, and on his crops for the year 1915 the bank had a mortgage for $3,400.   Poor Cropper, he had no house or granary, and for that reason he was not well prepared to crop the land for himself or the bank.   To aid him and itself, and to secure its loan, the good bank request Bovey-Shute to take a mortgage on the land and then to furnish material and erect a house and granary for Cropper.   Bovey-Shute refused to do it unless the bank would guarantee payment or agree to reduce the mortgage liens against the land to $8,900.   It did agree to reduce the mortgage liens $3,400, the sum for which it held a chattel mortgage,—and up went the house and the granary.   For material and construction Cropper made to the company a mortgage for $1,665 and interest.

Meantime there were foreclosures and redemptions, thus:

In December, 1916, the lumber company foreclosed for $1,213.85.

In January, 1917, Frank Spaulding foreclosed the first mortgage for $3,660.54.

On August 14, 1917, Bovey-Shute redeemed, paying $4,354.29.

Then, within three days, under a mortgage of March 1, 1915, the bank redeemed, paying $4,361.91.

Then, on August 24, 1917, Bovey-Shute redeemed from the bank, paying $6,309.77.   By its redemption Bovey-Shute paid the bank on its mortgage $1,947.59.   For that sum, with interest and costs, the trial court gave judgment against the bank, and did also adjudge that the mortgages against the land in excess of $8,900 should be subjected to the liens of the lumber company.   The judgment was strictly in accordance with the agreement of the bank, as made by its deceased manager.

However, appellants claim that the agreement is *ultra vires*,—that

it was beyond the power and authority of the bankers, and that the redemption was a voluntary payment. On those points it is needless to cite authorities. The right of a bank to make loans on land and on crops does necessarily imply the right to improve the land and to care for the crops and to make the same available. A bank has the same right as a natural person to care for its property; it is not bound to incur the risk of losing a horse for the want of a nail or a shoe. When it takes a loan on land and on crops it must have a right to improve the land and to care for the crops. In this case the bank had a perfect right to bargain, as they did, for the construction of a house and granary. It was good business, and it should not have lead to any litigation.

In regard to the voluntary payment, nearly $2,000, we must not think it the purpose of Bovey-Shute to make the bank a present of anything. By its foreclosure and redemption from a first-mortgage foreclosure, the bank had put Bovey-Shute Company in a dilemma. The company had to redeem from the bank or to risk the loss of their mortgage and money amounting to over $4,000. Counsel for the bank insist that the proper remedy of the lumber company was to have brought an action to cancel the bank redemption, but the company were business men, and not prophets or clairvoyants and not able to forecast the minds of the judges. They did not want to risk a suit that might have dragged until after the period of redemption. When a party unjustly contrives to put another in a dilemma, to put him, as it were, between the Devil and the deep sea, and to subject him to necessity and distress, and he jumps one way, it is not for the wrongdoer to insist that he should have jumped the other way.

Judgment affirmed.

Bronson and Grace, JJ., concur in the result.